UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ADAM JOSEPH PERSELL,

              Petitioner,

      v.

RONALD HAYNES,

              Respondent.

C23-5275 TSZ

ORDER

THIS MATTER comes before the Court on a Report and Recommendation issued by the Honorable Theresa L. Fricke, Chief United States Magistrate Judge, docket no. 29 ("R&R"). After reviewing the R&R, to which petitioner pro se offered no objection, the Court inquired whether petitioner wished to have an attorney appointed to represent him in this habeas matter. _See_ Order at 4–5 (docket no. 32). Petitioner requested counsel, docket no. 33, and the Court appointed Vicki W.W. Lai and Andrew Kennedy of the Federal Public Defender's Office. _See_ Order (docket no. 34); Notice of Appearance (docket no. 35). The appointed lawyers have filed objections to the R&R, docket no. 37, to which the Attorney General for the State of Washington has responded, docket no. 38. Having again reviewed the R&R, having considered the objections to the R&R and the response thereto, and having thoroughly reviewed the record in this matter and applied

ORDER - 1

the level of scrutiny warranted under the circumstances, the Court enters the following Order.

**Background**

Petitioner Adam Joseph Persell is currently serving a life sentence without the possibility of release after having been the subject of a "sting" operation known as "Net Nanny," which was conducted via the Craigslist Casual Encounters online platform ("Craigslist") by the Washington State Patrol Missing and Exploited Children Task Force ("Task Force").  _See_ _State v. Persell_, No. 52236-5-II, 2020 WL 1867050, at *1 & *7 (Wash. Ct. App. Apr. 14, 2020).  Although charged with and convicted of attempted rape of a child, petitioner did not have any contact with an actual child; his interactions were with a detective posing as "Hannah," a mother of three offering to allow someone to teach her kids about sex.  _See id._ at *1–2.

**1.      Evidence and Arguments Presented at Trial**

The "Net Nanny" operation at issue, the fourth or fifth of its kind, was conducted by the Task Force in September 2016 in Thurston County.  _See_ Verbatim Report of Proceedings (July 25, 2018) at 40:11–15, 41:6–20, & 73:10–23, Ex. 21 (docket no. 14-1 at 795–96 & 828).  After petitioner responded to the Task Force's posting on Craigslist, the detective posing as "Hannah" provided a phone number so that petitioner could text her.  _See_ 2020 WL 1867050, at *1.  After several exchanges of texts and pictures, "Hannah" set forth certain rules that included the use of condoms and lubricant.  _See id._ at *2.  "Hannah" invited petitioner to come over, and petitioner eventually responded that he "might be able to sneak away for a bit, lunch and all.  Just enough for a meet and greet

ORDER - 2

kinda thing." *Id.* When petitioner arrived at the designated apartment, he was arrested. *Id.* At trial, the prosecution offered no evidence that petitioner possessed any condoms or lubricant at the time of his arrest. *Id.*

In closing argument, petitioner's attorney analogized appearing at the apartment without those accoutrements to showing up, after discussing the way to rob a bank, without any of the items needed to actually accomplish the robbery. *See* Verbatim Report of Proceedings (July 26, 2018) at 234–35, Ex. 22 (docket no. 14-1 at 992–93). Based on this reasoning, defense counsel asked the jury to conclude that the prosecution had failed to meet its burden of proving beyond a reasonable doubt that petitioner had taken a substantial step toward committing rape of a child. *Id.* at 232–45 (docket no. 14-1 at 990–1003). The prosecutor countered in rebuttal that petitioner's actions of repeatedly texting with "Hannah," requesting, receiving, and sending pictures, and driving to a "meet and greet" in a non-public place were substantial steps, and that petitioner might have assumed "Hannah" would provide the requisite condoms and lubricant. *Id.* at 246–52 (docket no. 14-1 at 1004–10). The prosecutor summed up as follows: "[D]id Mr. Persell take a substantial step to having sex with three children? Absolutely he did. He took multiple substantial steps.[1] You just have to decide which

---

[1] The jury was instructed that a "substantial step" is "conduct that strongly indicates a criminal purpose and that is more than mere preparation." *Id.* at 213 (docket no. 14-1 at 971). For each count, the jurors were told that they must find *inter alia* that petitioner "did an act that was a substantial step toward the commission of rape of a child." *Id.* at 214–16 (docket no. 14-1 at 972–74). The jurors were also advised that their verdict must be unanimous, *id.* at 218 (docket no. 14-1 at 976), but they were not informed that they all had to agree on which act or acts by petitioner, if any, constituted a substantial step.

ORDER - 3

one." *Id.* at 251 (docket no. 14-1 at 1009).  The jury found petitioner guilty as charged of two counts of attempted first degree rape of a child and one count of attempted second degree rape of a child.  *See* 2020 WL 1867050, at *1–2.

### 2.    Grounds Raised on Direct Appeal

Petitioner's appellate counsel presented three issues:  (i) whether the prosecution had met its burden of proving guilt beyond a reasonable doubt; (ii) whether the trial court's prohibition of future contact with petitioner's son and stepson was either unconstitutional or an abuse of discretion; and (iii) whether trial counsel was ineffective in failing to object to certain testimony about the notification ring tone on petitioner's phone.[2]  *See* Brief of Appellant at 1–3, Ex. 5 (docket no. 14-1 at 54–56).  In his Statement of Additional Grounds, petitioner made six arguments, the last of which had eight subparts.  *See* SAG, Ex. 7 (docket no. 14-1 at 126–33).  Petitioner's additional grounds were as follows:  (1) his life sentence, which is based on a previous "strike" offense,

---

[2] At trial, a detective testified that, as she was waiting for the arrest team to enter the apartment in which she and petitioner were meeting, she heard a text message alert on petitioner's phone that consisted of "a laughing sound" followed by the words "touch my dick."  Verbatim Report of Proceedings at 117:23–118:3, Ex. 21 (docket no. 14-1 at 872–73).  In his Statement of Additional Grounds, petitioner indicated that the notification ring tone on his phone was actually "woo-hoo ha ha, text message."  SAG at 7, Ex. 7 (docket no. 14-1 at 132).  Petitioner's appellate attorney argued that his trial counsel was ineffective for having failed to object to the detective's testimony as improper opinion evidence, but the detective was a percipient witness and, thus, this basis for asserting deficient performance lacked merit.  *See* 2020 WL 1867050, at *5.  Neither petitioner nor his appellate attorney accused his trial lawyer of ineffective assistance for not cross-examining the detective about whether she had misheard or misperceived the text message alert or for essentially foregoing the opportunity to cross-examine the detective, having only confirmed that her name was not "Hannah" and asking no further questions, *see* Verbatim Report of Proceedings at 118:20–119:6, Ex. 21 (docket no. 14-1 at 873–74), and these issues have been waived.

ORDER - 4

constitutes unconstitutional double jeopardy; (2) the "substantial step" element of attempted rape of a child is unconstitutionally vague; (3) the trial court erred in failing to allow an entrapment defense; (4) the state should adopt the federal standard relating to entrapment; (5) the trial court erred in failing to dismiss the charges on the basis of outrageous government conduct;[3] and (6) trial counsel was ineffective in failing to (A) challenge a warrantless search of petitioner's phone, (B) impeach a prosecution witness concerning a "confirmation" text sent to petitioner's phone, (C) present exculpatory evidence gathered by a defense investigator, (D) call any witness or present any favorable character evidence, (E) object to testimony about the notification ringtone on petitioner's phone, (F) offer petitioner's phone and a video of his arrest as evidence, (G) offer as evidence a pre-trial psychological and sexual deviancy evaluation of petitioner, and (H) pursue an entrapment defense. *Id.* Division 2 of the Washington

---

[3] Petitioner's trial attorney, along with defense counsel for three others caught in the snare of "Net Nanny," challenged the "sting" operation on the ground that it constituted outrageous government conduct because *inter alia* it was partially funded by a private donor, namely Operation Underground Railroad. *See Persell*, 2020 WL 1867050, at *7; *State v. Glant*, 13 Wn. App. 2d 356, 465 P.3d 382 (2020); *State v. Garcia*, No. 52594-1-II, 2020 WL 7233150 (Wash. Ct. App. Dec. 8, 2020); *see also* Verbatim Report of Proceedings (Mar. 26, 2018), Ex. 20 (docket no. 14-1 at 682–752). The partnership between Operation Underground Railroad and the Task Force has resulted in over 200 arrests. *See State v. Bilgi*, 19 Wn. App. 2d 845, 496 P.2d 1230, at ¶¶ 98–99 (2021). Division 2 of the Washington Court of Appeals has repeatedly rejected various attacks on the "Net Nanny" operation. *See Glant*, 13 Wn. App. at 369–75; *Garcia*, 2020 WL 7233150, at *8–10; *see also State v. Stott*, 29 Wn. App. 2d 55, 542 P.3d 1018 (2023); *State v. Pouncy*, No. 54670-1-II, 2021 WL 5578045 (Wash. Ct. App. Nov. 30, 2021). To the extent petitioner continues to pursue the argument raised in his Statement of Additional Grounds that the trial court erred in denying the motion to dismiss in which "Net Nanny" was characterized as outrageous government conduct, *see* Additional Ground No. 5 (docket no. 14-1 at 129–30), the Court concludes that the state trial and appellate court decisions were not "contrary to," and did not "involve[ ] an unreasonable application of, clearly established Federal law," and therefore, petitioner cannot obtain habeas relief on this basis. *See* 28 U.S.C. § 2254(d)(1).

ORDER - 5

Court of Appeals rejected all arguments, on either the merits or procedural grounds,[4] except for the challenge to the no-contact provision in petitioner's sentence, and it remanded for the trial court to consider petitioner's fundamental right to parent.  *See* 2020 WL 1867050, at *3–12.  Importantly, no motion for discretionary review of Division 2's decision was filed with the Washington Supreme Court.  *See* Mandate, Ex. 10 (docket no. 14-1 at 168–69).

3.    **Grounds Raised During State Collateral Proceedings**

In his PRP, petitioner asserted only one ground, namely that victims of child sex offenses must be "genuine" children, not fictitious beings.  *See* PRP, Ex. 11 (docket no. 14-1 at ).  Division 2 rejected this argument, explaining that a completed crime must involve a real minor, but an inchoate offense need not.  *See* Order Dismissing Petition, Ex. 3 (docket no. 14-1 at 40–41) (citing *State v. Majeed*, 14 Wn. App. 2d 868, 474 P.3d 1085 (2020)).

In a motion for discretionary review presented to the Washington Supreme Court, petitioner identified the following issues:  (i) an entrapment defense was improperly denied; (ii) rape of a child cannot be committed on an "invented" minor, and in the absence of a "corporeal" victim, petitioner was convicted of merely fantasizing; and

---

[4] Division 2 did not address the merits of Additional Grounds Nos. 3 and 4, relating to an entrapment defense, as well as Additional Grounds 6A–6G, asserting ineffective assistance of counsel, because they involved matters outside the record on direct appeal.  2020 WL 1867050, at *8.  The Washington Court of Appeals did, however, reach the merits of Additional Ground 6H, and it concluded that petitioner cannot show he was entitled to an entrapment defense and, thus, he cannot demonstrate deficient performance on the part of trial counsel in not pursuing such defense.  *Id.* at *11.

ORDER - 6

(iii) a defendant may deny criminal intent while also asserting the defense of entrapment, citing *State v. Arbogast*, 15 Wn. App. 2d 851, 478 P.3d 115 (2020).  *See* Mot. for Discretionary Review, Ex. 13 (docket no. 14-1 at 188–204).  The Deputy Commissioner of the Washington Supreme Court denied the motion for discretionary review on the merits with respect to the second ground, indicating that the "determinative question in an attempt charge is whether the defendant believed the intended victim was a minor," and that, contrary to petitioner's contention, "he was not punished for a mere 'thought crime.'"  Ruling Denying Review, Ex. 4 (docket no. 14-1 at 43–44).  With regard to the first and third issues concerning entrapment, the Deputy Commissioner observed that those matters were not raised in the PRP and could not be presented for the first time in a motion for discretionary review.  *Id.* (docket no. 14-1 at 44).

Petitioner filed a motion to modify the Deputy Commissioner's ruling.  Mot. to Modify, Ex. 15 (docket no. 14-1 at 274–91).  In a section titled "GROUNDS FOR RELIEF," the motion to modify contained four headings in all capital letters:  (I) "WASHINGTON STATE DEPRIVED THE DEFENDANT OF DUE PROCESS OF LAW"; (II) "ENTRAPMENT DEFENSE"; (III) "CRIMINAL ATTEMPT'S SUBSTANTIAL STEP"; and (IV) "THE STATE'S VIOLATION OF TITLE III (18 USCS § 2510) AND FOURTH AMENDMENT RIGHT AGAINST UNREASONABLE SEARCH AND SEIZURES."  *Id.*  Five Justices of the Washington Supreme Court denied petitioner's motion to modify without substantive explanation.  *See* Order, Ex. 16 (docket no. 14-1 at 622).

/ / /

/ / /

ORDER - 7

**4.      Grounds at Issue in Habeas Proceeding**

In his petition for writ of habeas corpus, petitioner incorporated by reference his motion to modify, repeating under each of four enumerated grounds in the pre-printed form the hand-written words "SEE ATTACHED MOTION TO MODIFY PP. 1–17 EXHIBIT A." *See* Pet. at 6–11 (docket no. 6).  Respondent Ronald Haynes, Superintendent of Airway Heights Corrections Center, interpreted the petition as raising the following grounds:

> Ground 1:    Washington State deprived Persell of due process by improperly shifting the burden of proof to him to disprove elements of the crime through an affirmative defense.
>
> Ground 2:    Washington State deprived Persell of due process in how it crafted the entrapment defense statute which requires a defendant admit guilt before raising entrapment.
>
> Ground 3:    The trial court deprived Persell of due process by unlawfully extending or misconstruing the statute requiring the state to prove Persell made "substantial steps" to commit the crime of attempt.
>
> Ground 4:    The state violated Persell's Fourth Amendment rights and Title III (18 U.S.C. § 2510) by improperly obtaining and using electronic surveillance.

Answer at 6 (docket no. 13 at 6).  Respondent was subsequently directed to supplement his answer to address the following claims:

> 1.    Trial counsel provided ineffective assistance in failing to pursue an entrapment defense and failing to argue the entrapment defense statute was unconstitutional.
>
> 2.    Trial counsel provided ineffective assistance in failing to argue that the State improperly shifted the burden of proof to him to disprove elements of the crime through an affirmative defense, and "erroneously informed [petitioner] he must first admit to the crimes prior to allowing him the defense of entrapment."

ORDER - 8

3.      Trial counsel provided ineffective assistance in advising plaintiff not to testify on the grounds "that if he chooses to take the stand, it would open the door for the state to bring up his prior conviction."

4.      Trial counsel provided ineffective assistance in failing to challenge the validity of the search warrant(s) for petitioner's cell phone and in failing to move to suppress evidence obtained pursuant to the search warrant(s).

Order at 2–3 (docket no. 18) (citing or quoting Pet. at 20–21, 23–24, 26, & 33 (docket no. 6)).  The R&R treats the four above-enumerated claims as Grounds 5, 6, 7, and 8, respectively.  R&R at 2 (docket no. 29).

The R&R concludes that none of the eight identified habeas grounds[5] were properly exhausted, that all grounds are procedurally defaulted, and that petitioner cannot establish the requisite cause and prejudice to proceed on his defaulted claims.  *Id.* at 7–14.  The R&R recommends dismissal with prejudice of all eight habeas grounds and denial of a certificate of appealability.  *Id.* at 15.

Counsel appointed to represent petitioner have not objected to the R&R's analysis and recommendation of dismissal as to Grounds 1, 2, 3, and 4; however, with respect to Grounds 5, 6, 7, and 8, petitioner's appointed attorneys object on his behalf to the R&R's conclusion that petitioner cannot show cause and prejudice for failing to exhaust such claims.  *See* Objections (docket no. 37).  Respondent counters that Grounds 5, 6, 7, and 8 were improperly inferred from "fragments in the state-court record and Persell's pro se

---

[5] The attorneys appointed to represent petitioner in this habeas proceeding have indicated that, given the passage of time since petitioner's conviction became final, he cannot now amend his habeas petition to raise any other claim.  *See* Pet.'s Status Report at 3 (docket no. 36); *see also* 28 U.S.C. § 2244(d).

ORDER - 9

SAG," and that the Court should confine its consideration to the four grounds respondent has derived from petitioner's motion to modify the Washington Supreme Court Deputy Commissioner's ruling denying discretionary review of the denial of petitioner's PRP. *See* Resp. at 3–4 (docket no. 38).  In the alternative, respondent argues that the Court should adopt the R&R's analysis and conclude that any habeas relief with respect to Grounds 5, 6, 7, and 8 is barred for procedural reasons.

**Discussion**

**A.      Applicable Standards**

To qualify for habeas relief, a prisoner in a State's custody must show *inter alia* that (i) he or she exhausted the remedies available in the State's courts, or (ii) the State lacks any corrective process, or (iii) circumstances exist that render the State's corrective process ineffective to protect the prisoner's rights.  *See* 28 U.S.C. § 2254(b)(1).  When a state prisoner fails to timely exhaust state remedies and is then barred from pursuing corrective process by the State's procedural rules, the related federal habeas claims are considered procedurally defaulted.  *See Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).  If a state prisoner's federal habeas claims are defaulted pursuant to "an independent and adequate state procedural rule," then federal habeas review is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Id.* at 750.

In *Coleman*, the United States Supreme Court held that an attorney's negligence in a postconviction proceeding does not establish the requisite "cause" to permit federal

ORDER - 10

habeas relief, but in a later opinion, the high court articulated an exception to this rule. *See Martinez v. Ryan*, 566 U.S. 1 (2012).  Pursuant to *Martinez*, a state procedural default will not bar a federal habeas court from hearing a "*substantial* claim" of ineffective assistance of trial counsel if, in the state collateral proceedings, either no attorney was appointed or the appointed attorney was also ineffective.  *Id.* at 17; *see also Trevino v. Thaler*, 569 U.S. 413 (2013).  Regardless of whether a state prisoner has exhausted state court remedies, a petition for a writ of habeas corpus may be denied on the merits.  *See* 28 U.S.C. § 2254(b)(2).

**B.      Objections to the R&R**

No party has objected to the R&R's recommendation concerning Grounds 1, 2, 3, and 4, and the R&R is ADOPTED as to those claims, which were not properly exhausted, are now procedurally barred by Washington's one-year time limit on collateral attack, RCW 10.73.090(1), and have not been rescued by any showing of cause and prejudice. *See* R&R at 7–9 & 11–14 (docket no. 29).  With regard to Grounds 5, 6, 7, and 8, no contention is made that petitioner properly exhausted these claims or that they are not procedurally defaulted.  The R&R's analysis on those issues is therefore ADOPTED, and the Court turns to the question of whether petitioner can establish the "cause" and "prejudice" required to proceed further on Grounds 5, 6, 7, and 8.

**1.      Grounds 5 and 8**

Grounds 5 and 8 were presented in petitioner's Statement of Additional Grounds (on direct review) to the Washington Court of Appeals, which addressed Ground 5 on the merits and declined to reach Ground 8, but they were not presented to the Washington

ORDER - 11

Supreme Court because no motion for discretionary review was filed.  Under Washington law, petitioner was not entitled to the assistance of counsel in pursuing discretionary review by the Washington Supreme Court.  *See* RCW 10.73.150.  No showing has been made that petitioner did not know the limits of his appointed appellate attorney's representation or that a pro se motion for discretionary review would not have been permitted under Washington's procedural rules.

Rather, counsel appointed to represent petitioner in this habeas proceeding assert that petitioner could not have filed a statement of additional grounds with the Washington Supreme Court and would have been reliant on his appellate attorney to include the claims at issue in a motion for discretionary review.  *See* Obj. at 2 (docket no. 37).  Given that petitioner would have needed to bring a motion for discretionary review without the assistance of counsel, the Court is unpersuaded that any preclusion of a pro se statement of additional grounds was a "cause" of the default at issue.  *See* *Coleman*, 501 U.S. at 753 (explaining that "cause" is "something *external* to the petitioner, something that cannot fairly be attributed to him," for example, "a showing that the factual or legal basis for a claim was not reasonable available" or that "'some interference by officials' . . . made compliance impracticable" (emphasis in original, quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986))).

In light of its ruling that "cause" has not been demonstrated, the Court need not address the issue of "prejudice" as to Grounds 5 and 8, but it nevertheless observes that the decision of the Washington Court of Appeals with respect to merits of Ground 5 and the procedural posture of Ground 8 was not "contrary to," and did not "involve[ ] an

ORDER - 12

unreasonable application of, clearly established Federal law," and thus, no miscarriage of justice will result from failing to further consider these habeas claims. *See* 28 U.S.C. § 2254(d)(1).

With regard to Ground 5, the Washington Court of Appeals concluded that, because petitioner could not show he was entitled to an entrapment defense, having exhibited "little resistance toward committing the crimes" that he was accused of attempting, he could not prevail on a theory that trial counsel was ineffective in failing to pursue an entrapment defense. 2020 WL 1867050 at *11–12. This reasoning is consistent with federal jurisprudence about entrapment and ineffective assistance of counsel. *See United States v. Gomez*, 6 F.4th 992, 1001 (9th Cir. 2021) (reiterating that the entrapment defense requires a showing of (i) governmental inducement of the crime, and (ii) absence of a predisposition on the part of the accused to engage in the criminal conduct); *United States v. Dollison*, 107 F. App'x 757, 759 (9th Cir. 2004) (rejecting a claim that counsel was ineffective in failing to recognize a potential entrapment defense because videotape evidence established that the defendant "was predisposed to commit the crime"); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984) (holding that, to prove ineffective assistance of counsel, a convicted defendant must show that (i) counsel's performance was deficient, *i.e.*, "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment,'" and (ii) the deficient performance prejudiced the defense, *i.e.*, "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable"). Thus,

ORDER - 13

even if petitioner were allowed to proceed on Ground 5, he could not obtain habeas relief on this basis.

As to Ground 8, the Washington Court of Appeals indicated that it could not address petitioner's pro se claim that trial counsel was ineffective in failing to challenge the validity of the search warrants for petitioner's cell phone and/or move to suppress evidence obtained pursuant to the search warrants because these contentions involved matters outside the record on appeal.  This ruling is consistent with federal jurisprudence, which envisions that ineffective assistance of trial counsel claims may be reserved for collateral proceedings.  *See* *Martinez*, 566 U.S. at 4 (observing that Arizona does not permit such claims on direct review and framing the question presented as "whether a federal habeas court may excuse a procedural default of an ineffective-assistance claim when the claim was not properly presented in state court due to an attorney's errors in an initial-review collateral proceeding").

Counsel appointed for petitioner in this habeas matter assert that Washington's practice of allowing convicted individuals who are represented by an attorney on direct review to file statements of additional grounds causes confusion about how ineffective assistance claims should be raised, *i.e.*, in a PRP in conjunction with which evidence outside the trial record may be presented.  *See* Obj. at 2 (docket no. 37).  This theory might explain why petitioner did not include in his PRP the various accusations he later launched about trial counsel's allegedly deficient performance, but the result remains that the record contains no declaration by the lawyer who represented petitioner at trial

ORDER - 14

concerning his reason or lack of reason for not challenging the warrant and/or seeking to suppress the evidence gathered pursuant to the warrant.

Instead, the record reveals that a Thurston County Deputy Prosecuting Attorney responded to petitioner's Statement of Additional Grounds as follows:

> [A] suppression motion would only have the potential of excluding the alleged "test" messages that occurred after Persell's arrest, which do not appear to have been offered during the trial. The text messages relied upon by the State were the conversations that Persell had with law enforcement, which would not be suppressed even if Persell's attorney had pursued the issue that Persell raises.

Br. in Resp. to SAG at 17, Ex. 8 (docket no. 14-1 at 158). This representation to the Washington Court of Appeals is consistent with the copies of the search warrant and the log of evidence procured through execution of the search warrant, which were attached to petitioner's motion to modify the Washington Supreme Court Deputy Commissioner's ruling denying discretionary review of the denial of his PRP, _see_ Ex. 15 (docket no. 14-1 at 583–88 & 595), as well as with the testimony at trial about the "test" messages, _see_ Verbatim Report of Proceedings (July 25, 2018) at 118, 143, & 167–68, Ex. 21 (docket no. 14-1 at 873, 898, 922–23) (inquiring about "test" texts that were sent to petitioner's phone, but not offering any physical evidence relating to such "test" messages). In other words, trial counsel's decision not to move to suppress the fruits of the search warrant was apparently strategic, based on an evaluation of futility, _see Ochoa v. Davis_, 16 F.4th 1314, 1336 (9th Cir. 2021) ("strategic choices are 'virtually unchallengeable'"), and even if petitioner could show "cause" for failing to exhaust Ground 8, he cannot demonstrate the requisite "prejudice" because the text messages presented as evidence at trial were not

ORDER - 15

procured through any search warrant, but rather were on the phones of law enforcement personnel who participated in the "Net Nanny" sting operation.  For all the foregoing reasons, the habeas petition is DENIED as to Grounds 5 and 8.

2.    **Grounds 6 and 7**

Unlike Grounds 5 and 8, Grounds 6 and 7 were not included in petitioner's SAG, and the Washington Court of Appeals did not consider those claims on direct review. They were also not presented in petitioner's PRP, and they are appropriately treated as procedurally defaulted.  Grounds 6 and 7 concern the advice allegedly provided to petitioner by trial counsel, namely erroneous guidance that petitioner was required to "admit to the crimes" before he could assert an entrapment defense, *see* Mot. to Modify at 4, Ex. A to Pet. (docket no. 6 at 23), and a warning that choosing to testify on his own behalf would "open the door for the [S]tate to bring up his prior conviction," *see id.* at 2 (docket no. 6 at 21).  Petitioner's appointed federal habeas attorneys argue that, because petitioner was pro se during state collateral proceedings, his procedural default as to Grounds 6 and 7 should be excused under *Martinez*.

The Court first addresses Ground 7 and concludes that, because such claim of ineffective assistance of trial counsel is not "substantial," meaning that it does not have "some merit," *see Martinez*, 566 U.S. at 14 & 17, petitioner's procedural default bars further consideration of the habeas claim.  The rules of evidence generally prohibit evidence of a person's character for purposes of proving an action in conformity therewith and preclude evidence of other crimes or bad acts for purposes of proving a person's character.  *See State v. Arbogast*, 199 Wn.2d 356, 378, 506 P.3d 1238 (2022)

ORDER - 16

(citing ER 404). The rules of evidence, however, allow evidence of past crimes or wrongdoing for other purposes, for example, proving intent. *Id.* (citing ER 404(b)).

Predisposition, within the meaning of the entrapment defense, involves an inquiry into the intentions of the defendant. *Id.* at 379. The entrapment defense asks the fact finder to conclude that "the defendant had no predisposition to commit the crime until the intent was implanted in his or her mind by police" and that "the defendant was induced to commit the crime through fundamentally unfair efforts by law enforcement." *Id.* As to the issue of predisposition, "a broad swath of evidence," including a defendant's criminal history, is relevant. *Id.* Thus, if petitioner had taken the stand to try to persuade the jury that he had been entrapped, or that he lacked the requisite mens rea for attempt, he would have opened the door to the State's offering of evidence about his 2002 conviction for second degree rape of a child (ROC 2°). *See* Ex. 1 (docket no. 14-1 at 3); *see also* Verbatim Report of Proceedings (July 24, 2018) at 7–10, Ex. 21 (docket no. 14-1 at 762–65) (ruling by the trial judge that the ROC 2° conviction would be admissible for impeachment "based on other factors [besides credibility] contingent on the way the defendant testifies, should the defendant testify"). As summarized by petitioner in his motion to modify, to which he referred in his habeas petition, trial counsel's advice about the probable consequences of testifying was accurate, and as to Ground 7, the habeas petition is DENIED.

As to Ground 6, the Court ultimately concludes that habeas relief cannot be granted. Washington law does not require that an accused "admit" the crime charged or "admit" criminal liability before being allowed to present an entrapment defense. *See*

ORDER - 17

*State v. Galisia*, 63 Wn. App. 833, 836–37, 822 P.2d 303 (1992).  Rather, a defendant need only "admit" that the "*activity* on which a charge is based took place" and proffer "some evidence" to support the contention that he or she was "lured or induced to commit a crime" that he or she "had not otherwise intended to commit," to be entitled to an instruction on entrapment.  *Id.* at 837 (emphasis in original); *see also State v. Arbogast*, 15 Wn. App. 2d 851, 870, 478 P.3d 115 (2020), *aff'd*, 199 Wn.2d 356, 506 P.3d 1238 (2022).  Thus, to the extent that trial counsel told petitioner that he had to "admit to the crimes" to pursue an entrapment defense, such advice was incorrect.

When petitioner's attorney provided this guidance, however, Washington law was not entirely clear.  At the time of petitioner's trial in July 2018, *see* Exs. 21 & 22 (docket no. 14-1), *Galisia* had been called into doubt by *State v. Trujillo*, 75 Wn. App. 913, 883 P.2d 329 (1994).  In December 2020, when it decided *Arbogast*, Division 3 of the Washington Court of Appeals rejected what it viewed as *Trujillo*'s "heightened standard" and resurrected *Galisia*'s guidance that an accused need *not* "admit" criminal liability to present an entrapment defense  *See* 15 Wn. App. 2d at 871–73.[6]  By then, petitioner had

---

[6] In March 2022, the Washington Supreme Court held that (i) *Galisia* articulated the proper burden of production, *i.e.*, submission of "some evidence" in support of an entrapment defense, and (ii) *Trujillo* set forth a correct statement of the law, *i.e.*, the evidence supporting an entrapment defense must be "sufficient to permit a reasonable juror to conclude that the defendant has established the defense of entrapment by a preponderance of the evidence."  *See Arbogast*, 199 Wn.2d at 370–72.  The Washington Supreme Court cautioned that "courts must take care to differentiate between the burden of production and the burden of persuasion.  Whether the evidence is credible and whether it amounts to proof by a preponderance lies with the jury.  The court's role in deciding whether to allow an entrapment defense is more limited—it is not the trial court's job to weigh the evidence."  *Id.* at 372.

ORDER - 18

already been tried, convicted, and sentenced.  When viewed in this historical context, petitioner's trial attorney's explanation about the entrapment defense in Washington was not so seriously erroneous as to have deprived petitioner of the "counsel" guaranteed by the Sixth Amendment.  *See* *Strickland*, 466 U.S. at 687.

Moreover, although a belief on the trial lawyer's part that petitioner could not both assert entrapment and deny the State's proof as to the elements of the charged offenses likely played a role in the development and execution of trial strategies, the Court is persuaded that petitioner cannot establish prejudice because he cannot demonstrate that, if his appointed attorney had sought a jury instruction on entrapment, the trial court would have given one or been reversed for refusing to do so.  As recognized by Division 2 of the Washington Court of Appeals, petitioner simply lacked the evidentiary support for an entrapment defense.  *See* *Persell*, 2020 WL 1867050 at *11–12.  Petitioner has also not provided any evidence or otherwise shown that, had he been advised differently about the law governing the entrapment defense, he would have accepted a favorable plea offer, chosen to testify on his own behalf notwithstanding his 2002 conviction, or taken any action that might have produced a different result.  In sum, even if procedural default as to Ground 6 was excused, the ineffective assistance of counsel claim would not warrant habeas relief.[7]

---

[7] Given the Court's conclusions about Grounds 5, 6, 7, and 8, the Court need not address respondent's argument that such grounds were improperly inferred from petitioner's motion to modify, which was attached to and incorporated by reference in his habeas petition.  *See* Pet. at 6–11 & Ex. A (docket no. 6); *see also* Resp. at 3–5 (docket no. 38) (citing *Clark v. Sweeney*, 607 U.S. 7 (2025)).

ORDER - 19

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)    The Report and Recommendation, docket no. 29, is ADOPTED in part and MODIFIED in part;

(2)    With respect to Grounds 1, 2, 3, and 4, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, docket no. 6, is DENIED because such claims are unexhausted and procedurally defaulted and petitioner does not assert that any "cause" excuses their default;

(3)    With respect to Grounds 5, 6, 7, and 8, the habeas petition, docket no. 6, is DENIED because such claims are unexhausted and procedurally defaulted and the arguments concerning "cause" and "prejudice" to excuse such default, as set forth in the objections to the R&R filed by appointed counsel, docket no. 37, lack merit;

(4)    A certificate of appealability is DENIED.  *See* 28 U.S.C. § 2253(c); *see also Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

(5)    The Clerk is DIRECTED to enter judgment consistent with this Order, to send a copy of this Order and the Judgment to all counsel of record and to Magistrate Judge Fricke, and to CLOSE this case.

IT IS SO ORDERED.

Dated this 30th day of March, 2026.

Thomas S. Zilly
United States District Judge

ORDER - 20